IN RE INTEREST OF KENNETH MCDONELL, ALLEGED TO BE A
MENTALLY ILL DANGEROUS PERSON.
STATE OF NEBRASKA, APPELLEE, V. KENNETH MCDONELL,
APPELLANT.
427 N.W.2d 779

Filed August 12, 1988.   No. 88-012.

James H. Hoppe for appellant.

David W. Stempson, Deputy Lancaster County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

BOSLAUGH, J.

On August 12, 1987, a petition was filed alleging that the appellant, Kenneth McDonell, was a mentally ill dangerous person. After a hearing before the mental health board of Lancaster County, Nebraska, the appellant was, on August 20, 1987, committed to the Department of Public Institutions. On December 7, 1987, the order was affirmed by the district court. McDonell has now appealed from that order to this court.

The appellant contends that the mental health board and the district court erred when they found there was clear and convincing evidence that the appellant was mentally ill and dangerous as defined by Neb. Rev. Stat. § 83-1009(1) (Reissue 1987).

Section 83-1009 defines a mentally ill dangerous person as any "mentally ill person . . . who presents [a] substantial risk of serious harm to another person or persons within the near future as manifested by evidence of recent violent acts or threats of violence or by placing others in reasonable fear of such harm . . . ."

Furthermore, Neb. Rev. Stat. § 83-1035 (Reissue 1987) provides in part:

A hearing shall be held by the mental health board to determine whether there is clear and convincing proof that the subject of a petition is a mentally ill dangerous person and that neither voluntary hospitalization nor other alternatives less restrictive of his or her liberty than a mental health board-ordered treatment disposition are

available or would suffice to prevent the harm described in section 83-1009.

In reviewing a final order made by the district court in mental health commitment proceedings, this court must affirm the order of the district court unless, as a matter of law, the order is not supported by clear and convincing evidence. *In re Interest of Kinnebrew*, 224 Neb. 885, 402 N.W.2d 264 (1987); *State v. Steele*, 224 Neb. 476, 399 N.W.2d 267 (1987). See, also, Neb. Rev. Stat. § 83-1043 (Reissue 1987).

The appellant has admitted in his brief that "[t]here is no dispute that the appellant is mentally ill," but contests the findings below that the appellant is "dangerous." Brief for appellant at 8.

This court, in *In re Interest of Blythman*, 208 Neb. 51, 302 N.W.2d 666 (1981), provided a detailed analysis of the issue of "dangerousness." We there said:

For there to be compliance with the fourteenth amendment's due process clause, there must be an independent finding of dangerousness. . . .

. . . .

The key to confinement of one who is mentally ill lies in the finding that he is dangerous, i.e., that absent confinement, he is likely to engage in particular acts which will result in substantial harm to himself or others. Indefinite preventive detention cannot be authorized for those "who have a propensity to behave in a way that is merely offensive or obnoxious to others; the threatened harm must be substantial." . . .

. . . .

To comply with due process, there must be a finding that there is a substantial likelihood that dangerous behavior will be engaged in unless restraints are applied. "While the actual assessment of the likelihood of danger calls for an exercise of medical judgment, the sufficiency of the evidence to support such a determination is fundamentally a legal question. . . . To confine a citizen against his will because he is likely to be dangerous in the future, it must be shown that he has actually been dangerous in the recent past and that such danger was

manifested by an overt act, attempt or threat to do substantial harm to himself or to another." . . .

In determining whether a person is dangerous, the focus must be on the subject's condition at the time of the hearing. Actions and statements of a person alleged to be mentally ill and dangerous which occur prior to the hearing are probative of the subject's present mental condition. "But a mere recitation of past acts, in the absence of a showing that such clearly forms the foundation for a prediction of future dangerousness, cannot serve as the basis for a finding that one is a mentally ill person . . . ." . . .

In order for a past act to have any evidentiary value it must form some foundation for a prediction of future dangerousness and be therefore probative of that issue.

(Citations omitted.) *Id.* at 55-58, 302 N.W.2d at 670-71.

The record shows that at the hearing before the mental health board, the State called three witnesses, the first of whom was Nancy Johnson, a former high school classmate of the appellant's. Johnson testified that the subject began contacting her in 1968, asking her for dates despite the fact that she was engaged to be married. The appellant's contact with Johnson ceased after her marriage in 1968, but resumed in 1971. Over the course of that year, the appellant had eight contacts with Johnson in the form of letters and phone calls, one call being described by Johnson as threatening in nature. Following these occurrences, Johnson filed a mental health warrant in Cass County against the appellant. According to Johnson, the appellant was then "committed" for treatment. Johnson noted six contacts with the appellant in 1972, which included an appearance at her home, driving repeatedly up and down the street in front of her home, and appearances at the school where she was employed. Similarly, in 1973, Johnson had "several" contacts with the appellant, including letters an being followed by him as she drove her car to and from work. No contacts occurred in 1974, but at least three took place in 1975, most of which involved the appellant's following Johnson. Again, no contacts occurred in 1976 and 1977; three contacts occurred in 1978, comprised of a letter, a phone call, and

following Johnson. No contacts were noted in 1979; numerous telephone calls were made by appellant to Johnson at her school in 1980; several contacts took place in 1981; no contacts were made in 1982 and 1983; six contacts happened in 1984; and several incidents took place in 1985, one of which included her witnessing of the appellant's assault on a police officer at Southeast High School, where she was coaching track. As a result of that incident, the appellant was incarcerated for 22 months immediately preceding the filing of the petition in this case.

Despite the frequency of her contacts with the appellant, Johnson denies ever having been physically assaulted by him, nor did he make physical threats to her person.

Debra Loomis-Wooldridge, a mental health counselor at the Lincoln Correctional Center, stated that she first had contact with the appellant in March of 1986, as he was involved in both individual and group therapy at the correctional center. While participating in these therapy groups, Loomis-Wooldridge had occasion to document her encounters as counselor with the appellant, several of which are relevant to this appeal. On May 12, 1987, Loomis-Wooldridge stated that the appellant was part of a conflict resolution group at the correctional center, and after the group's session, the appellant wanted to read the notes taken by the staff during the session, which reading was denied. She stated that the appellant became very angry, began swearing, and shook his fist at the counselors.

On May 18, 1987, the appellant was speaking with Loomis-Wooldridge in her office regarding his mental health file when he began yelling and shaking his finger at Loomis-Wooldridge, warning her not to say anything bad about him in his file. Loomis-Wooldridge asked the appellant to leave her office, but he continued to yell. After several more requests to leave, the appellant did leave and on his way out stated, "I won't forget you after I leave here." Loomis-Wooldridge interpreted the appellant's statement as a threat and also stated that his behavior caused her to fear a physical assault.

Finally, on August 13, 1987, after becoming aware that a hearing was pending before the mental health board, the

appellant attempted to persuade Loomis-Wooldridge to tell him what she would testify to at the hearing. Loomis-Wooldridge described the appellant's behavior during this confrontation as "intimidating, shouting at me, shaking his finger at me."

On cross-examination, Loomis-Wooldridge denied having been physically assaulted by the appellant and also stated that he had not assaulted any other personnel while at the correctional center.

Dr. Suzanne Bohn, in her capacity as director of mental health at the Department of Correctional Services, testified that she came into contact with the appellant in 1985 and has had contact with him at least every 3 months since that time. Dr. Bohn has conducted several evaluations of the appellant during the course of his confinement in the mental health unit, including clinical interviews, reviews of records, and consultations with other staff members. As a result, Dr. Bohn was able to diagnose the appellant as suffering from paranoid schizophrenia, with a reasonable degree of psychological certainty. Dr. Bohn stated that the appellant has displayed anger when confronted with his problems and on one occasion began yelling, and then stormed out of the room and slammed the door. On July 13, 1987, when Dr. Bohn spoke with the appellant about Nancy Johnson, the appellant became angry and said, "She's not going to make an ass out of me." Dr. Bohn characterized this statement as a threat and felt compelled to warn Nancy Johnson, as she feared for her and her family's safety. In addition to notifying Johnson, Dr. Bohn also notified the chief of police and the Lancaster County attorney's office. When asked if she had an opinion as to whether or not the appellant was a mentally ill dangerous person, she stated, to a reasonable degree of psychological certainty, that "I believe he's definitely mentally ill and I think he's — I feel fairly certain that he's potentially a quite dangerous individual." Dr. Bohn did state that the appellant has never assaulted her, nor had he ever been known to assault others at the institution.

Following presentation of evidence by the State, counsel for the appellant then called Barbara McDonell, the appellant's mother, as a witness. She testified that prior to her son's confinement in 1985, he had lived with her and her husband and

that her son had been involved in "one or two altercations" with her. When specifically asked if the appellant had ever physically assaulted her, Mrs. McDonell responded, "Very, very little," and, "He didn't hurt me. He just kind of shoved me and that was all." Mrs. McDonell stated that this incident occurred about 10 or 15 years ago and that such an incident had not occurred since that time.

The appellant testified and denied assaulting correctional officers at the correctional complex and also denied assaulting staff members.

The mental health board stated the basis for its finding as follows:

> The Board determines that the statements made by the subject to Mrs. Loomis-Wooldrige [sic], considering the context in which they were made, justifiably placed a reasonable fear of harm from a violent act or acts in Mrs. Loomis-Wooldrige [sic]. The Board also determines that the subject's statements made to Dr. Bohn, which were considered by Dr. Bohn, a well qualified and experienced mental health professional, to be serious enough to report to the police and to Mrs. Johnson, are the kind of statements contemplated by Section 83-1009 of the Nebraska Mental Health law as threats of violence.
>
> . . . .
>
> The Board does not place major emphasis on the assault and battery against the policeman in 1985 or the gun incident in 1978, not having before it the full circumstances of either incident. The other testimony of Mrs. Johnson does not, of itself, make out a case of dangerousness to other persons, the Board feels. The Board, however, feels strongly in that the recent statements and actions of the subject occurring in 1987 as outlined above present clear and convincing evidence of a threat of violence to Mrs. Loomis-Wooldrige [sic] and places [sic] her in reasonable fear of violent acts and, in addition, present clear and convincing evidence of a threat of violence to Mrs. Johnson, as so deemed by Dr. Bohn, of the kind contemplated within Section 83-1009 of the Nebraska Mental Health law.

In affirming the order of the mental health board, the district court found:

> The past history established that the petitioner has had a long history of mental illness and of assaultive behavior and also of harrassment [sic] of a specific individual. Present observations are that petitioner has been agitated and very angered and has no insight into his mental illness or to his degree of anger and lack of control. He is on medication but has told the health professionals that if he is released, he would discontinue his medication. He has also made threatening gestures and comments to the health professionals at the time they were attempting to interview and counsel the petitioner. The diagnosis of the petitioner is paranoid schizophrenia.
>
> The evidence presented adequately supports the findings and order of commitment by the Lancaster County Mental Health Board.

We believe the record supports a finding that the appellant was dangerous in the recent past and that such danger was manifested by his threat to Loomis-Wooldridge, "I won't forget you after I leave here," and his statement to Dr. Bohn regarding Nancy Johnson, "She's not going to make an ass out of me." These incidents occurred in May and July of 1987, just prior to the mental health board hearing in August of 1987. These statements are probative of the mental condition and attitude of the appellant at the time of the hearing. These statements, in addition to the intimidating nature of the appellant's behavior as described by both Loomis-Wooldridge and Dr. Bohn, and Dr. Bohn's psychological opinion that the appellant is "potentially a quite dangerous individual," require that the order of the district court be affirmed.

AFFIRMED.