IN RE INTEREST OF BLYTHMAN.
STATE OF NEBRASKA ET AL., APPELLEES, V.
THEODORE W. BLYTHMAN, APPELLANT.

302 N.W.2d 666

Filed February 13, 1981. No. 43174.

Sean J. Brennan, Shelley K. Stall, and Scott P. Helvie, Public Defenders of Lincoln County, for appellant.

George E. Clough, Lincoln County Attorney, and Marvin L. Holscher for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

Theodore W. Blythman has appealed from the District Court for Lincoln County, which affirmed an

order of the Board of Mental Health of Lincoln County finding Blythman to be a mentally ill dangerous person and committing him to the Lincoln Regional Center. Blythman assigns the following as errors: (1) The evidence is insufficient to support the conclusion reached by the board; (2) There is insufficient evidence of recent acts or threats of violence; (3) Constitutional guarantees of due process and equal protection are not met by proof of acts or threats of violence committed more than 5 years prior to the filing of the mental health proceeding; (4) The District Court should have reversed the order of the mental health board for procedural due process violations in ordering a pre-dispositional evaluation; and (5) The board did not impose the least restrictive treatment alternative available. We affirm the judgment of the District Court.

Blythman was incarcerated in the Nebraska Penal and Correctional Complex after a District Court found, on April 14, 1975, that he was a sexual sociopath and that he could not be benefited by treatment. Several hearings were subsequently held pursuant to defendant's motions for annual evaluation to determine whether or not defendant remained a sexual sociopath and whether or not he could be benefited by treatment. One such review has been appealed to this court, and further background into defendant's mental illness and the prior proceedings can be found at *State v. Blythman*, 201 Neb. 285, 267 N.W.2d 525 (1978).

Pursuant to our opinion in *State v. Shaw*, 202 Neb. 766, 277 N.W.2d 106 (1979), Blythman was returned to the District Court for Lincoln County for sentencing on the original conviction of fondling a girl under the age of 16, in violation of Neb. Rev. Stat. § 28-929(2) (Reissue 1975). On May 9, 1979, the District Court sentenced the defendant to 4 years, with 4 years' credit for time served, and thereafter returned him to the penal complex as a untreatable sexual sociopath. His return to the complex for an indefinite period of time was the only option open to the court under the sexual sociopath

laws then existing, Neb. Rev. Stat. §§ 29-2901 et seq. (Reissue 1975), until he was found to be "a fit subject for discharge." § 29-2906.

On June 1, 1979, the District Court ordered that the defendant be returned to Lincoln County for further proceedings, pursuant to Neb. Rev. Stat. §§ 29-2920 and 29-2921 (Reissue 1979), a part of 1979 Neb. Laws, L.B. 378, and the Nebraska Mental Health Commitment Act, Neb. Rev. Stat. Ch. 83, art. 10 (Reissue 1976). L.B. 378, which was effective May 23, 1979, also repealed §§ 29-2901 to 29-2910 (Reissue 1975) under which statutory provisions the defendant was then being held. Section 29-2921 provides in part: "All persons now committed under Chapter 29, article 29 . . . shall forthwith be returned to the district court which committed them for review and disposition consistent with the terms of sections 29-2911 to 29-2921." Section 29-2920 requires in part: "Ninety days prior to the release from custody of any mentally-disordered sex offender . . . the . . . unit of government having final release authority shall give notice to the county attorney . . . that the release . . . is so pending. Upon receipt of such notice . . . the county attorney shall cause mental health commitment proceedings to be commenced . . . pursuant to the Nebraska Mental Health Commitment Act." As of May 23, 1979, for the first time, there was reason and authority to proceed with a civil mental health commitment against the defendant.

On June 28, 1979, a petition was filed before the Board of Mental Health of Lincoln County, alleging Blythman to be a mentally ill dangerous person and requesting involuntary commitment and board-ordered treatment. A final hearing was held on August 10, 1979, in which both the State and the defendant adduced evidence and rested. The board then ordered a predisposition investigation of Blythman by a qualified psychologist before making its final decision as to the allegations in the petition. On August 28, 1979, the mental health board reconvened and took testimony from Dr. Donald

E. Fischer of the Great Plains Mental Health Center concerning his evaluation of Blythman. Dr. Fischer diagnosed the subject as having a personality disorder of a mixed passive-dependent type and immature type; having borderline or mild mental retardation; and suffering from pedophilia. He concluded that this constituted a dangerous mentally ill person in the sense of being potentially dangerous to others by sexually, impulsively, and directly acting out in a very forceful manner as he has done in the past. The doctor further recommended treatment. The testimony of Dr. Fischer was admitted by the board over the objection of Blythman's counsel.

The board concluded that there is clear and convincing proof that Blythman is a mentally ill dangerous person and that neither voluntary hospitalization nor other treatment less restrictive of the subject's liberty than board-ordered treatment are available or would suffice to prevent the harm described in Neb. Rev. Stat. § 83-1009 (Cum. Supp. 1980). The board ordered that Blythman be committed to the Lincoln Regional Center and there remain until transferred or discharged, as provided by law.

An appeal from the order of the board was taken to the District Court for Lincoln County and was affirmed. Blythman appeals now from the order of the District Court, which we affirm.

The first three assignments of error are related and will be considered together, i.e., that the evidence is insufficient to support the conclusion of the board; that there is insufficient evidence of recent acts or threats of violence; and that constitutional guarantees of equal protection and due process are not met by proof of acts committed more than 5 years prior to the filing of the mental health proceeding. Neb. Rev. Stat. § 83-1037 (Cum. Supp. 1980) requires a conclusion based on clear and convincing proof that the subject is a mentally ill dangerous person and that less restrictive alternatives are not available or would not suffice to

prevent the harm described in § 83-1009. The latter section states in pertinent part: "Mentally ill dangerous person shall mean any mentally ill person or alcoholic person who presents: (1) A substantial risk of serious harm to another person or persons within the near future, as manifested by evidence of *recent violent acts* or threats of violence or by placing others in reasonable fear of such harm . . . ." (Emphasis supplied.) The appellant asserts that proof of acts which occurred prior to his incarceration in the Penal Complex and more than 5 years previous to the filing of the mental health commitment proceeding are not "recent acts" within the meaning of § 83-1009.

In order for a subject to be civilly committed pursuant to the Nebraska Mental Health Commitment Act, there must be both a finding that the subject is mentally ill as well as a finding that he is dangerous, either to himself or to others. § 83-1009. *Benson v. Meredith*, 455 F. Supp. 662 (D.C. 1978). Mr. Blythman concedes that he suffers from some mental illness; however, he challenges the finding that he is dangerous. For there to be compliance with the fourteenth amendment's due process clause, there must be an independent finding of dangerousness. *Jackson v. Indiana*, 406 U.S. 715, 92 S. Ct. 1845, 32 L. Ed. 2d 435 (1972). By the same token, "[a] finding of 'mental illness' alone cannot justify a State's locking a person up against his will and keeping him indefinitely in simple custodial confinement." *O'Connor v. Donaldson*, 422 U.S. 563, 575, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975). Section 83-1009 requires that such dangerousness must be evidenced by some recent act or threat.

There is little doubt that the Nebraska Mental Health Commitment Act was passed in response to a number of federal cases defining constitutional safeguards for the commitment of the mentally ill. The act was enacted after the U.S. District Court for the District of Nebraska declared Neb. Rev. Stat. §§ 83-325 and 83-328 (Reissue 1971), and § 83-306(4) (Cum. Supp.

1974), to be unconstitutional in *Doremus v. Farrell*, 407 F. Supp. 509 (D. Neb. 1975). The Federal District Court stated: "To permit involuntary commitment upon a finding of 'mental illness' and the need for treatment alone would be tantamount to condoning the State's commitment of persons deemed socially undesirable for the purpose of indoctrination or conforming the individual's beliefs to the beliefs of the State. Due process and equal protection require that the standards for commitment must be (a) that the person is mentally ill and poses a serious threat of substantial harm to himself or to others; and (b) that this threat of harm has been evidenced by a recent overt act or threat." *Doremus* at 514-15.

The requirement that there must be a recent overt act or threat stems from the necessity of defining mental illness requiring confinement as where the person's potential for doing harm to himself or to others is great enough to justify a massive curtailment of his liberty. See *Humphrey v. Cady*, 405 U.S. 504, 92 S. Ct. 1048, 31 L. Ed. 2d 394 (1972). The prediction of dangerousness is a difficult and often elusive task. Hagel, *Defending the Mentally Ill: A Discussion of Nebraska's Involuntary Commitment Proceedings*, 57 Neb. L. Rev. 1 (1978).

"Although attempts to predict future conduct are always difficult, and confinement based upon such a prediction must always be viewed with suspicion, we believe civil confinement can be justified in some cases if the proper burden of proof is satisfied and dangerousness is based upon a finding of a recent overt act, attempt or threat to do substantial harm to oneself or another." *Lessard v. Schmidt*, 349 F. Supp. 1078, 1093 (E.D. Wis. 1972).

The key to confinement of one who is mentally ill lies in the finding that he is dangerous, i.e., that absent confinement, he is likely to engage in particular acts which will result in substantial harm to himself or others. Indefinite preventive detention cannot be

authorized for those "who have a propensity to behave in a way that is merely offensive or obnoxious to others; the threatened harm must be substantial." *Cross v. Harris*, 418 F.2d 1095, 1100 (D.C. Cir. 1969). That court further stated: "But when a determination of 'dangerousness' will result in a deprivation of liberty, no court can afford to ignore the very real constitutional problems surrounding incarceration predicated only upon a supposed propensity to commit criminal acts .... Incarceration for a mere propensity is punishment not for acts, but for status, and punishment for status is hardly favored in our society. In essence, detention for status is preventive detention.

. . . .

"[T]he test of what anticipated conduct may justify preventive detention cannot be simply whether the legislature has power to prohibit such conduct or to attack the evil it portends. . . . But while it [the legislature] may prohibit ugly billboards because they give offense, it may not lock up ugly people for the same reason. The power to control an evil does not remove all restrictions on the means that may be employed for that purpose. This principle is fundamental to the constitutional order." *Cross* at 1101-03.

To comply with due process, there must be a finding that there is a substantial likelihood that dangerous behavior will be engaged in unless restraints are applied. "While the actual assessment of the likelihood of danger calls for an exercise of medical judgment, the sufficiency of the evidence to support such a determination is fundamentally a legal question. . . . To confine a citizen against his will because he is likely to be dangerous in the future, it must be shown that he has actually been dangerous in the recent past and that such danger was manifested by an overt act, attempt or threat to do substantial harm to himself or to another." *Lynch v. Baxley*, 386 F. Supp. 378, 391 (M.D. Ala. 1974).

In determining whether a person is dangerous, the focus must be on the subject's condition at the time

of the hearing. Actions and statements of a person alleged to be mentally ill and dangerous which occur prior to the hearing are probative of the subject's present mental condition. "But a mere recitation of past acts, in the absence of a showing that such clearly forms the foundation for a prediction of future dangerousness, cannot serve as the basis for a finding that one is a mentally ill person pursuant to ORS 426.005(2)." *State v. Lucas*, 31 Or. App. 947, 950, 571 P.2d 1275, 1277 (1977).

In order for a past act to have any evidentiary value it must form some foundation for a prediction of future dangerousness and be therefore probative of that issue. Blythman argues that proof of acts committed 5 years prior to the hearing are not "recent acts" within the meaning of § 83-1009. In *Hill v. County Board of Mental Health*, 203 Neb. 610, 279 N.W.2d 838 (1979), we stated that there is no way to establish a definite time-oriented period to determine whether an act is recent. Each case must be decided on the basis of the surrounding facts and circumstances.

In *Hill* we held: "The term recent should be given a reasonable construction. We hold that an act or threat is 'recent' within the meaning of section 83-1009, R. S. Supp., 1978, if the time interval between it and the hearing of the mental health board is not greater than that which would indicate processing of the complaint was carried on with reasonable diligence under the circumstances existing, having due regard for the rights and welfare of the alleged mentally ill dangerous person and the protection of society in general." *Hill* at 617, 279 N.W.2d at 841.

In the case at bar, Blythman was committed as a sexual sociopath in 1975; was returned to the District Court on May 9, 1979, for sentencing on the original conviction; and on June 1, 1979, was returned for further proceedings pursuant to the Nebraska Mental Health Commitment Act. Considering the changes in the law during these proceedings, the complaint was carried

on with reasonable diligence. Blythman argues that *Hill* should not be applied here because such an interpretation of "recent" would permit involuntary civil commitment regardless of how remote in time the acts or threats of violence are. The argument is well taken. However, such a result does not necessarily follow if it is kept in mind that any act that is used as evidence of dangerousness must be sufficiently probative to predict future behavior and the subject's present state of dangerousness. It is conceivable that an act more recent than another would be less probative of the subject's future conduct than the earlier act. Considering all of the factors, we cannot say that as a matter of law an act which occurred 5 years ago is too remote to be probative of the subject's present state of dangerousness. This is particularly true since the subject did not have an opportunity to commit a more recent act in the intervening years.

The fact situation in this case is somewhat unique in that the subject's mental illness manifests itself in sexual acts toward young girls. He has not had the opportunity to commit such an act in the past 5 years because he has been incarcerated in the Penal Complex, where he has had no access to prospective victims. We cannot believe that the Legislature intended that by requiring a recent act or threat, a mentally ill person should be given the opportunity to commit a more recent act once a sufficient amount of time has passed since the last act. Judicial action need not be forestalled until another young girl is sexually assaulted, or some other harm takes place. *In re Powell*, 85 Ill. App. 3d 877, 407 N.E.2d 658 (1980); *In re Janovitz*, 82 Ill. App. 3d 916, 403 N.E.2d 583 (1980).

A similar argument was advanced in *Kraemer v. Mental Health Board of the State of Nebraska*, 199 Neb. 784, 261 N.W.2d 626 (1978). There, we stated that an incident occurring in May 1975 was sufficiently recent to conform to the meaning of the statute. "Any other view would require, as to those already committed when

the enforcement of the former act was enjoined and who were entitled to a new hearing under section 83-1072, R. R. S. 1943, the discontinuance of treatment and release in order to afford an opportunity for a more recent act of violence before any rehearing and further confinement could take place. Such would be contrary to the evident and expressed purposes of section 83-1072, R. R. S. 1943, when read in conjunction with the entire act." *Kraemer* at 799, 261 N.W.2d at 634.

In the present case, the testimony indicated that there was a very high probability that Blythman would repeat the behavior for which he was originally determined to be a sexual sociopath. Expert testimony by Dr. L. E. Woytassek, a psychiatrist, was that, based on a reasonable medical certainty, he believed Blythman to be mentally ill as well as dangerous. This testimony was based on the expert's knowledge of Blythman since 1965. Dr. Woytassek testified that Blythman had a history of sexual deviation with reference to children, and that "there was a very high probability he would repeat." There was testimony by Dr. Fischer, the board-ordered expert, which reinforced the prior testimony. Blythman was diagnosed as suffering from pedophilia, which is the diagnostic term for the crime of molesting minors. Dr. Fischer testified that to a reasonable medical certainty, if Blythman did not obtain treatment, the sexual incidents which happened before would happen again. This testimony was based both on the incidents which occurred prior to confinement in the Penal Complex as well as a recent examination, showing that there had been no demonstration by Blythman of real growth in the awareness of his needs and how he will meet those needs and control his impulsiveness.

There was no evidence presented by Blythman to rebut the testimony of either psychiatrist. Neither was there any evidence that the acts which occurred 5 years previous to the hearing were too remote to be probative of Blythman's present state of dangerousness and prob-

able future conduct. Blythman did not present any evidence that he had learned to cope with his immaturity and impulsiveness, or that he had been "cured" of his pedophilia.

We therefore hold that there is sufficient evidence to support the conclusion reached by the board that Blythman is a mentally ill dangerous person. We further hold that proof of acts committed more than 5 years prior to the filing of the mental health proceedings does not contravene Blythman's due process and equal protection guarantees where there is sufficient evidence that such acts are still probative of the subject's present state of dangerousness.

The fourth assignment of error refers to the testimony by Dr. Fischer. Blythman argues that the board had no authority to order further testimony by an independent psychiatrist prior to making a finding that the subject is mentally ill and dangerous. He relies on Neb. Rev. Stat. § 83-1040 (Reissue 1976) which authorizes the board to request a predisposition investigation to be conducted to determine the best available treatment alternative. Inherent in that authorization is the requirement that the board must first make the determination that the subject is mentally ill and dangerous. The board in this case did not make that finding prior to ordering an independent evaluation of Blythman. We have reviewed the record de novo, as we are required to do. *Hill v. County Board of Mental Health, supra.* We find that there was sufficient evidence before the board that it could have found Blythman to be mentally ill and dangerous before ordering the predisposition investigation. The evidence by the State's psychiatrist, Dr. Woytassek, was unrebutted, that Blythman is mentally ill and dangerous, having a history of sexual deviation with reference to children, and that there was a very high probability that he would repeat.

The board further asked for recommendations from counsel for both parties as to where a predisposition

evaluation should be made. Counsel for the subject made his recommendations at that time, and did not object to the predisposition evaluation. It was not until after the evaluation was made and the psychiatrists had been called before the board to testify that Blythman's counsel objected to the testimony of Dr. Fischer. The objection was overruled and testimony was taken by the board. Attorneys for Blythman were given the opportunity to extensively cross-examine Dr. Fischer, and did so.

Neb. Rev. Stat. § 83-1059 (Reissue 1976) makes the general rules of evidence, Neb. Rev. Stat. Ch. 27 (Reissue 1979), applicable to proceedings under the Nebraska Mental Health Commitment Act. *Kraemer v. Mental Health Board of the State of Nebraska, supra.* Section 27-614 authorizes a judge, on his own motion, to call witnesses, in which event all parties are entitled to cross-examine such witnesses. Section 27-706 permits a judge to enter an order to show cause why expert witnesses should not be appointed.

Although the board may have been in error in failing to first make the determination that Blythman was mentally ill and dangerous, the subject was not prejudiced. As we have previously stated, the board could have made the necessary findings prior to ordering the predisposition evaluation. The board gave counsel the opportunity to recommend the facility to conduct the evaluation, and further allowed extensive cross-examination of the psychiatrist. Based on the foregoing, we find that Blythman's rights to a fair and impartial board were safeguarded and there was no deprivation of his rights to due process. Any error on the part of the board was, in this instance, harmless and is not cause for reversal.

The final assignment of error is that the board did not impose the least restrictive treatment alternative that was available. Neb. Rev. Stat. § 83-1038 (Cum. Supp. 1980) requires: "The disposition ordered by the mental health board shall represent the alternative which

imposes the least restraint upon the liberty of the subject required to successfully treat the particular mental illness and prevent the particular harm which was the basis for the board's finding the person to be a mentally ill dangerous person. . . ." Blythman argues that he should have been allowed to follow an outpatient treatment on a voluntary commitment basis. The testimony by Dr. Fischer, in response to a question regarding the possibility of treatment on an intensive outpatient basis, was: "The supervision would have to be spelled out so articulately, provisions so iron-clad, if you will, that I can't really envision them. And I think that the patient would feel he was hounded. It may well be that it could follow in-patient care."

The statement by the chairman of the mental health board at the time of commitment explained that the reason Blythman was committed to the Lincoln Regional Center was that it was the only state facility with adequate security features. After reviewing the evidence and testimony, we agree that such a secured facility is necessary to successfully treat this particular mental illness and prevent the harm which the subject is likely to repeat in a less secure environment.

The evidence is clear and convincing that Theodore W. Blythman is a mentally ill and dangerous person, and the order of the District Court is affirmed.

AFFIRMED.