# IN THE COURT OF APPEALS OF IOWA

No. 17-1539
Filed November 7, 2018

**IN RE THE DETENTION OF THOMAS G. RUTHERS, JR.,**
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Mahaska County, Daniel P. Wilson and Joel D. Yates (motion for summary judgment, motion to dismiss for lack of subject matter jurisdiction, and trial), Judges.

        The respondent appeals from the district court judgment finding him to be a sexually violent predator subject to civil commitment. **REVERSED AND REMANDED.**

        Michael H. Adams of State Public Defender's Office, Des Moines, for appellant.

        Thomas J. Miller, Attorney General, and Tyler J. Buller, Assistant Attorney General, for appellee State.

        Heard by Danilson, C.J., and Potterfield and Doyle, JJ.

**POTTERFIELD, Judge.**

Thomas Ruthers Jr. appeals from a judgment finding him to be a sexually violent predator (SVP) under Iowa Code chapter 229A (2011). Ruthers contends the district court should have granted his motions to dismiss and his motion for summary judgment because he was not presently confined for a "sexually violent offense," within the meaning of Iowa Code section 229A.2(10)(g), at the time the State filed its petition, and the court similarly erred in finding him to be a SVP.[1]

## I. Background Facts and Proceedings.

In September 2010, Ruthers was charged by trial information in Mahaska County with sexual abuse in the second degree. The charge was based on reports Ruthers sexually abused R.S. in 2007 when Ruthers helped R.S.'s mother move to Iowa. Ruthers was incarcerated in lieu of $35,000 bail pending trial.

In March 2012, shortly before a scheduled trial on the charge, Ruthers reached a plea agreement with the State providing that in exchange for his guilty plea to assault causing bodily injury to R.S., he would be sentenced to serve one year in the Mahaska County Jail with credit for one year already served. Under the plea agreement, the charge of sexual abuse in the second degree would be dismissed and Ruthers would be released from custody after he was sentenced.

In the jail, on Friday March 16, Ruthers signed a written plea of guilty to the misdemeanor assault charge in an amended trial information,[2] waiving his right to presence at sentencing.

---

[1] Ruthers also raised a number of other claims, both through his attorney and pro se. Because we determine this claim is dispositive, we do not consider the others.

[2] The written plea described the offense as an assault against the mother of R.S., a mistake that does not figure in the arguments on appeal. The State never alleged Ruthers assaulted R.S.'s

The following Monday, at 2:57 p.m., Ruthers' written plea of guilty was filed. The court accepted the plea of guilty to the misdemeanor assault, entered judgment as agreed in the plea agreement in an order filed 3:40 p.m., and dismissed the charge of sexual abuse in the second degree with prejudice. The court ordered that mittimus not issue. Ruthers was not present in court.

Sometime the same day, Ruthers was served in the jail with the State's petition for his commitment as a SVP, which was filed that afternoon at 1:10 p.m. He was not released as contemplated in the plea agreement but remained held in custody on the SVP petition.

On March 22, the district court held a hearing pursuant to Iowa Code section 229A.5(2) and entered a probable cause finding on the SVP petition. Ruthers was brought to the hearing and argued for dismissal on the ground he was not "presently confined" for a sexually violent offense because he had pled guilty to a nonsexual assault of an adult female, B.S. The court denied Ruthers' motion for dismissal, and Ruthers remained incarcerated on the probable cause finding for more than four years.[3]

The State, anticipating a problem based on Ruthers' motion, moved to set aside the guilty plea he had signed. On March 26, four days after the probable cause hearing and seven days after sentencing, the district court entered an order called "supplement"

---

mother; the mother's name is just one letter different than the name of R.S. Our record does not reveal the reason the mother was named in the written guilty plea rather than R.S. Ultimately, the court corrected the factual basis of the guilty plea to name R.S. as the victim. This issue was previously raised on direct appeal, subsequently dismissed, and raised again in postconviction-relief proceedings and on appeal of those proceedings. *See Ruthers v. State*, No. 16–0249, 2018 WL 739244 at *1–5 (Iowa Ct. App. Feb. 7, 2018).

[3] The parties seem to agree that the passage of time was Ruthers' preference because he wanted to litigate a postconviction application challenging the misdemeanor conviction for assault. The ruling denying postconviction relief was affirmed by this court on February 7, 2018. *See Ruthers*, 2018 WL 739244.

to its judgment, finding the specific factual basis for Ruthers' plea was "the defendant picked up the child victim, R.S., and threw him on the bed in a hard manner. The defendant caused R.S. to hit his head on the board, causing a bump."

Ruthers then filed a motion in the criminal case seeking a determination of whether he had to register as a sex offender. In a hearing on Ruthers' motion, the court declined to reach the merits of the issue raised by Ruthers, but added:

> [E]ven if I was going to make a determination on the merits, I wouldn't do anything else beyond what I've already done because [Iowa Code section] 708.15 indicates that the fact finder *may* make a determination that the offense was sexually motivated. I didn't make that determination. And I don't believe that 706.15 requires the court to make the determination that it was not sexually motivated.

(Emphasis added.) Prior to trial on the State's SVP petition, Ruthers filed a motion to dismiss, a motion for summary judgment, and a motion to dismiss for lack of subject matter jurisdiction. The motions were denied.

The SVP petition was tried to the court on August 19, 2017. In addition to expert testimony presented by the State and Ruthers, R.S. also testified. The court made the following findings of fact:

> The following have been established beyond a reasonable doubt:
> (1) State's Exhibits 3 and 4 establish that Ruthers has been convicted of a [past] sexually violent offense.
> (2) Between October 1, 2007, and November 30, 2007, on at least eight occasions Ruthers stayed in a hotel room with R.S. Only those two stayed in the hotel room on these occasions.
> (3) R.S. was the same gender and age range of Ruthers's previous pedophilic interest. R.S. has behavioral and learning problems.
> (4) Ruthers and R.S. slept in the same bed together while at the hotel room. No other adults were present on the occasions.
> (5) R.S. on at least one occasion swam naked in the hotel room's hot tub. Ruthers would not allow R.S. to wear swimming trunks.
> (6) In Mahaska County Ruthers pled guilty to assault causing bodily injury, a serious misdemeanor. The factual basis for Ruthers's plea of guilty as it relates to R.S. was as follows: "Picked him up and threw him on the

bed in a hard manner" and that he "hit his head on the board and had a bump." Ruthers humped R.S. The minutes of testimony go on to state that while Ruthers was throwing R.S. on the bed, it was in connection with sex acts performed by Ruthers on R.S.

(7) The Mahaska County conviction for assault causing bodily injury was sexually motivated. The facts and circumstances around this offense bear striking similarity to the events [that] got Ruthers in trouble in the State of West Virginia.

(8) Ruthers suffers from a mental abnormality, that being, Pedophilic Disorder.

(9) Ruthers is likely to commit predatory acts of sexual violence if not confined for treatment. In fact, Ruthers is 97.2% more likely than other sexual offenders to recidivate, based on Dr. Salter's scoring of the STATIC-99R.

(10) Ruthers's mental abnormality of Pedophilic Disorder causes him difficulty in his emotional and volition control.

(11) The likelihood that Ruthers will commit predatory acts if not confined is based in part on his relationship with R.S. in Mahaska County, his lack of prior successful treatment, and the actuarial and empirical data identified by Dr. Salter.

(12) Dr. Salter is focused on Ruthers's likelihood to recidivate during his lifetime, not just the next five to ten years.

(13) Ruthers has never successfully completed sex offender treatment. While in prison, he quit the program because of the facilitator.

(14) The Court concludes that Ruthers's involvement with R.S., which led to Ruthers pleading guilty, constitutes a "recent overt act." Specifically, the Court finds that Ruthers engaged in sexual contact with R.S. which includes Ruthers humping R.S. and Ruthers forcing R.S. to touch his penis.

(15) The above-described actions caused harm in a sexually violent nature.

(16) Ruthers admits to having at least four or five sexual victims, with the youngest victim being eight or nine.

On September 13, 2017, the court entered its ruling finding Ruthers to be a SVP and committing him to the custody of the Iowa Department of Human Services.

Ruthers appeals.

## II. Standard of Review.

The district court's ruling on a motion to dismiss and its construction of Iowa Code chapter 229A are reviewed for errors at law. *In re Det. of Tripp*, 915 N.W.2d 867, 873

(Iowa 2018). We review rulings on subject matter jurisdiction for correction of errors at law. *Klinge v. Bentien*, 725 N.W.2d 13, 15 (Iowa 2006). Likewise, rulings on summary judgment motions are reviewed for errors at law. *In re Det. of Stenzel*, 827 N.W.2d 690, 697 (Iowa 2013).

We review challenges to the sufficiency of the evidence for the correction of errors at law. *In re Det. of Betsworth*, 711 N.W.2d 280, 286 (Iowa 2006). We will affirm the finding a person is a SVP if it is supported by substantial evidence. *See id.* In determining whether substantial evidence supports the finding, we consider the evidence in the light most favorable to the State, including all legitimate inferences and presumptions that may be fairly and reasonably deduced from the record. *See id.* Evidence that raises only suspicion, speculation, or conjecture is insufficient. *See id.*

## III. Discussion.

The Iowa Supreme Court explained the two different tracks available to the State for the filing of a petition for commitment of a SVP under Iowa Code chapter 229A.

> Section 4 of the statute contains the gateway language to a petition for commitment under the SVP statute, the interpretation of which provides the fighting issue in this appeal. Section 4 provides a two-track approach to SVP commitment. The first track is provided by Iowa Code section 229A.4(1). Under Iowa Code section 229A.4(1), the state may file a petition alleging that a person who is "presently confined" is a "sexually violent predator." The language of the "presently confined" track in Iowa Code section 229A.4(1) does not contain a requirement of a recent overt act.
>
> The next subsection of section 4 provides the second track leading to a potential SVP commitment. Under Iowa Code section 229A.4(2), the state may file a petition alleging that a person is a sexually violent predator "if it appears that a person who has committed a recent overt act" meets any one of three statutory criteria. The three statutory criteria are where the person (1) "was convicted of a sexually violent offense and has been discharged after the completion of the sentence imposed for the offense," (2) was charged with a sexually violent offense but acquitted by reason of insanity and "has been released from confinement or any supervision," or

(3) was charged with a sexually violent crime but was found incompetent to stand trial, and "has been released from confinement or any supervision."

*In re Det. of Wygle*, 910 N.W.2d 599, 608–09 (Iowa 2018) (citing Iowa Code § 229A.4).

These two "tracks" are considered to be alternative options—the "presently confined" requirement is for respondents who are confined on a sexually violent charge, while the recent overt act requirement is for respondents who are not so confined. *See In re Det. of Gonzales*, 658 N.W.2d 102, 104 (Iowa 2003). Here, the district court ruled both that Ruthers was "presently confined" and that he had committed recent overt acts. Ruthers argues neither was correctly found. We address each in turn.

**A. Presently Confined.**

We first consider whether the State's filing of the SVP petition was proper under Iowa Code section 229A.4(1). In doing so, we must determine whether Ruthers was "presently confined." *See* Iowa Code § 229A.4(1) (allowing the filing of an SVP petition when it "appears that a person presently confined may be a sexually violent predator and the prosecutor's review committee has determined that the person meets the definition of a sexually violent predator").

The term "presently confined" is not expressly defined in chapter 229A, but our supreme court has repeatedly interpreted it. *See Wygle*, 910 N.W.2d at 607 (listing prior supreme court cases considering the meaning of "presently confined").

The court has also considered whether the term "presently confined" requires confinement post-sentencing. In *In re Det. of Willis*, 691 N.W.2d 726, 728–30 (Iowa 2005), our supreme court held that a respondent was "presently confined" for a sexually violent offense when he was in the county jail following a jury verdict of guilty of a sexually violent offense though his sentence on his conviction had not yet been imposed. The

court opined that "[n]either the language of section 229A.4(1), nor our interpretation of that statute in [*Gonzales*], requires that the subject of a petition for a sexually violent predator adjudication be convicted of a sexually violent offense before the petition is filed." *Willis*, 691 N.W.2d at 729 (citing *Gonzales*, 658 N.W.2d at 103–04).

Ruthers argues the district court erred when it found he was "presently confined" within the meaning of Iowa Code section 229A.4. He contends he was not presently confined because he was merely charged with sexual abuse at the time the petition was filed—there had been no determination whether he had, in fact, committed a sexually violent offense. The State counters that a charge, without an adjudication, is sufficient to trigger the confinement requirement under the definition in Iowa Code section 229A.2(11). Moreover, the State asserts that section 229A.2(10)(g) allows the State to prove the sexual nature of an offense as late as the trial of the SVP commitment trial.

Next, we turn to the definition of "sexually violent predator," as found in section 229A.2(11). The statute provides: "'Sexually violent predator' means a person who has been convicted of or charged with a sexually violent offense and who suffers from a mental abnormality which makes the person likely to engage in predatory acts constituting sexually violent offenses, if not confined in a secure facility." Iowa Code § 229A.2(11). The State, relying on *Willis*, contends the charge of sexual abuse—without any corresponding adjudication—is sufficient to fall within the definition.

Here, the basis for custody of Ruthers at the time the petition was filed was the fact that he was pending trial on a charge of sexual abuse in the second degree, a sexually violent offense as defined by Iowa Code section 229A.2(11). Ruthers was confined because he did not post bail. Unlike the defendant in *Willis*, there had been no

adjudication that Ruthers was guilty. 691 N.W.2d at 729. And the signing of a guilty plea form to a non-sexual assault does not satisfy the statute. *See Wygle*, 910 N.W.2d at 613 (observing that although there is no definition for "presently confined" the term requires the confinement be for a sexually violent offense—confinement for a non-sexual act would not meet constitutional commands of due process).

Thus, Ruthers was not "presently confined" at the time the State filed the SVP petition. As the result, the petition was not properly filed under section 229A.4(1).

**B. Timing of Adjudication 229A.2(10)(g)—Recent Overt Act.**

We now consider whether the commitment of Ruthers is appropriate under the second "track." *See* Iowa Code § 229A.4(2). In doing so, we must contemplate what act or acts may be considered as part of the "recent overt act" analysis and determine whether Ruthers' alleged overt act—which took place ten years before the hearing on the SVP petition—is "recent."

Here, the State argues section 229A.2(10)(g) permits it to look back at the facts underlying the non-sexual assault to which Ruthers pled guilty and prove—years later— at the commitment trial there was a sexual component to that assault.

The State's argument distorts the requirement of the second track of recent overt acts. Our Supreme Court said:

> Yet, the *Gonzales* court reasoned that in order to impose civil commitment consistent with the constitutional commands of due process, there generally must be a recent overt act. When a person is imprisoned for a sexually violent offense, the recent overt act could be deemed to be the underlying offense. But to allow a nonsexual act to be deemed to be a recent overt act, according to the *Gonzales* court, would "raise serious constitutional issues."

*Wygle,* 910 N.W.2d at 613 (citing Gonzales, 658 N.W.2d at 105):

The State's argument has been rejected by our Supreme Court in *Gonzalez*, where a defendant who had been discharged from a sentence for a sexually violent offense was re-arrested and confined on an operating-without-consent offense. 658 N.W.2d 105. The State contended it could look back to the earlier, discharged sentence to satisfy the "present confinement" requirement. *Id.* at 104. The court disagreed, recognizing this interpretation of the statute would allow a defendant charged with or serving a sentence for a non-sexual act to be committed without any showing of a recent overt sexually violent act. *Id.* at 105. The court found such an application to be unreasonable "because it would allow the State to reach back in time, seize on a sexually violent offense for which a defendant was discharged, and couple this with a present confinement for a totally different—or even perhaps a trivial—offense." *Id.*

Next, we consider the meaning of "recent" overt act. *See* Iowa Code § 229A.4(2) (allowing the filing of the petition that a person is a sexually violent predatory "stating sufficient facts to support such an allegation, if it appears that a person" has committed recent overt acts and meets a certain criterion). After the bench trial, the district court concluded Ruthers engaged in a sexual encounter with R.S. that constituted a recent overt act and such actions were sexually violent in nature. Ruthers contends the acts at issue in this case occurred too long before the petition was filed to be considered "recent overt acts." The acts occurred roughly four and one-half years prior to the filing of the State's petition.

A "recent overt act" is defined as "any act that has either caused harm of a sexually violent nature or creates a reasonable apprehension of such harm." Iowa Code § 229A.2(7). Whether there was a recent overt act under Iowa Code section 229A.4(2)

sufficient to support the SVP petition is a question of fact. *Tripp*, 915 N.W.2d at 874. It must be proved beyond a reasonable doubt by admissible evidence. *Id.*; *see also* Iowa Code §§ 229A.7(4), .5. "Recent" is not defined in the statute. *See Gonzales*, 658 N.W.2d at 103. Whether there was a recent overt act that caused harm of a sexually violent nature is an objective assessment based on all of the surrounding circumstances. *In re Det. of Swanson*, 668 N.W.2d 570, 576 (Iowa 2003). "Determining whether a past act of sexual violence has become too stale to serve as a predictor of future acts of a similar nature is not a precise task." *Willis*, 691 N.W.2d at 729. "The significance of a recent overt act in predicting future conduct is not the act but the inference against a particular propensity that arises from the absence of an overt act." *Id.* The Iowa Supreme court has also stated,

> [W]e have repeatedly held in the civil commitment context that a recent overt act, attempt, or threat was required to show that the person is likely, if allowed to remain at liberty, to inflict physical injury on himself or herself or on others. . . . [W]e [have] declared that because predicting dangerousness was "a difficult if not impossible task," a finding of mental illness alone could not be sufficient to justify an indefinite detention, but must also include a showing of a recent overt act, attempt, or threat. . . . [And] we [have] emphasized that evidence to support a judgment of dangerousness supporting a civil commitment must come in the form of a "recent overt act, attempt or threat." . . . [We] warned that expert speculation about dangerousness grounded in statistical probabilities cannot justify a commitment absent proof of a recent overt act.

*Wygle*, 910 N.W.2d at 612–13 (first alteration in original) (citations omitted).

Neither this court nor our supreme court has concluded a "recent overt act" must occur within a particular timeframe prior to the State's petition in order to satisfy Iowa Code section 229A.4(2). The statute contains no such requirement. The relevant question is "whether a past act of sexual violence has become too stale to serve as a predictor of future acts." *Willis*, 691 N.W.2d at 729.

Like *Gonzalez*, Ruthers had been previously convicted for a sexually violent offense, had discharged his sentence, and then, after the SVP petition was filed, was convicted of a non-sexual assault and discharged his time-served sentence. The sexual abuse charge was dismissed. The State here was allowed to prove the sexual offense at the commitment hearing, years after Ruthers had discharged the non-sexual offense sentence for which he was confined. Although Ruthers remained incarcerated during the lengthy period before the commitment trial, he was not incarcerated between the events of 2007 and the filing of charges in 2010. The State's evidence that the 2007 assault had sexual components was stale and does not support the recent overt act track.

Ruthers has a history of sexual abuse. He spent more than a decade in prison for his past actions. Seven years after Ruthers got out of prison, he committed the acts that gave rise to these proceedings. The fact that the State's petition was not filed until four and one-half years after the acts renders the acts too stale to serve as a predictor. *Contra Froats v State*, 140 P.3d 622, 629 (Wash. Ct. App. 2006) (concluding an overt act five years in the past can be "recent"); *see also In re Blythman*, 302 N.W.2d 666, 672 (Neb. 1981) (in deciding a mental-health commitment, the court stated, "Considering all of the factors, we cannot say that as a matter of law an act which occurred 5 years ago is too remote to be probative of the subject's present state of dangerousness").

Because the overt act upon which the State relies is not a "recent" overt act, Ruthers cannot be committed pursuant to section 229A.4(2).

**IV. Conclusion**

Ruthers was not "presently confined"—within the meaning of section 229A.4(1)— at the time the State filed the SVP petition. Additionally, the act the State alleged was the

necessary "recent over act" was no longer "recent" at the time of the SVP commitment hearing. We reverse the district court's ruling and remand for dismissal of the SVP action.

**REVERSED AND REMANDED.**

Doyle, J., concurs; Danilson, C.J., partially dissents.

**DANILSON, Chief Judge** (concurring in part and dissenting in part)

I agree with the majority with respect to the conclusion that Ruthers was not presently confined. I am unable to accept that the State can avoid proving a recent overt act simply because Ruthers was unable or unwilling to post bail. I part ways with the majority, however, and would affirm on the basis that the State established a recent overt act.

I agree we have no guidance with respect to the timeframe in which a "recent overt act" must occur prior to the State's petition in order to satisfy Iowa Code section 229A.2(7) (2012). The majority correctly notes the relevant question is "whether a past act of sexual violence has become too stale to serve as a predictor of future acts." *In re Detention of Willis*, 691 N.W.2d 726, 729 (Iowa 2005). However, contrary to the majority, I would conclude the past acts had not become too stale to serve as a predictor of future acts. As observed by the majority, Ruthers has a history of sexual abuse and has been in prison. The commission of a subsequent sexually violent crime would indicate he was not fully rehabilitated in the prison setting. The acts relevant here arose seven years after he left prison but were not discovered by authorities until nearly three years later. I cannot say the acts were too stale to serve as a predictor in light of how other courts have defined the term "recent." *See Froats v State*, 140 P.3d 622, 629 (Wash. Ct. App. 2006) (concluding five years in the past can be "recent"); *see also In re Blythman*, 302 N.W.2d 666, 672 (Neb. 1981) (finding an act occurring five years in the past was probative of dangerousness).

I would affirm and conclude the State offered sufficient evidence of dangerousness so as to satisfy the "recent overt act" requirement of chapter 229A and the act was a valid "predictor of future acts of a similar nature" because it demonstrated propensity. *See Willis*, 691 N.W.2d at 729.