IN RE INTEREST OF MATTHEW ELY, ALLEGED TO BE A MENTALLY ILL
DANGEROUS PERSON.
STATE OF NEBRASKA, APPELLEE, V. MATTHEW ELY, APPELLANT.
371 N.W.2d 724

Filed August 9, 1985.   No. 84-833.

Dennis R. Keefe, Lancaster County Public Defender, and Sean J. Brennan, for appellant.

No appearance for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

This is an appeal under the provisions of Neb. Rev. Stat. § 83-1043 (Reissue 1981) from an order of the district court for Lancaster County affirming an order of the mental health board of Lancaster County. The board had found Matthew Ely to be a mentally ill dangerous person within the meaning of Neb. Rev. Stat. § 83-1009 (Reissue 1981) and committed him to the Department of Public Institutions for up to 60 days. After a

period of observation, as provided in Neb. Rev. Stat. § 83-1041 (Reissue 1981), the facility director certified that Ely was a mentally ill dangerous person and recommended that he remain as an inpatient for treatment in the Lincoln Regional Center. The county attorney of Lancaster County, on March 7, 1985, informed this court that he did not intend to file a brief in the matter or argue before the court. Lancaster County apparently does not desire to inform us as to the county's position as to what is being or should be done about Ely. Nonetheless, the finding that as of July 19, 1984, Ely was a mentally ill dangerous person is of sufficient concern, at least to Ely, that the appeal must be heard.

Ely was first admitted to the regional center on June 18, 1984, because he had allegedly been threatening suicide. He was treated by a regional center staff psychiatrist, Dr. James K. Anthony. Dr. Anthony, after examining Ely, concluded that Ely was not suicidal at the time and did not feel that "he was dangerous to himself as had been alleged when he was brought in." Ely was therefore released on June 28, 1984.

Ely voluntarily returned to the regional center on July 5, 1984, but soon thereafter, on the next day, expressed a desire to be discharged. The staff felt that he was not ready to leave at that time, and a petition was filed with the mental health board on July 6.

A commitment hearing was held on July 12, 1984, before the board. Dr. Anthony testified as to his observations of Ely during his June stay at the regional center. John A. White, a staff psychologist and a member of Ely's treatment team, testified that he had seen Ely on two occasions and that Ely was exhibiting symptoms of manic-depressive disorder. He believed that Ely should remain in the regional center because "we've got very little information on Mr. Ely's case." After White's testimony concluded, the State moved for a continuance so that Ely's treating psychiatrist, Dr. Somasundaram Rajendran, who was testifying in another case, could be present. The continuance was granted over Ely's counsel's objection.

The hearing was resumed on July 19, 1984, with Dr. Rajendran present to testify. He related his observations of Ely and his opinion that Ely was suffering from a bipolar disorder

mixed with psychotic features. He also testified that he did not feel that Ely could provide for his basic human needs, because he believed Ely had "[n]o place to stay, no source of income. He may not be taking his medication." He testified that Ely was not suicidal.

We first note that mental commitment proceedings are reviewed de novo on the record in the district court. This court will not interfere with a final order of the district court unless it can be said that, as a matter of law, the order is not supported by clear and convincing evidence. *Hill v. County Board of Mental Health,* 203 Neb. 610, 279 N.W.2d 838 (1979).

The rules of evidence applicable to hearings before the mental health board are set out in Neb. Rev. Stat. § 83-1059 (Reissue 1981): "The rules of evidence applicable in civil proceedings shall be followed at all hearings held under this act. In no event shall evidence be considered which is inadmissible in criminal proceedings." The evidence is clear that Ely was suffering from a mental illness. All of the witnesses testified that Ely exhibited symptoms of mental disorder. Ely's volunteered statements and inappropriate behavior during the hearing before the mental health board further supported their opinions. However, "[a] finding of 'mental illness' alone cannot justify a State's locking a person up against his will and keeping him indefinitely in simple custodial confinement." *O'Connor v. Donaldson,* 422 U.S. 563, 575, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975). In addition, there must be a finding that the person is a danger to others or to himself. *In re Interest of Blythman,* 208 Neb. 51, 302 N.W.2d 666 (1981); § 83-1009.

In the instant case the finding was that Ely was a danger to himself due to his inability to provide for his basic human needs. Such finding, however, is not supported by admissible evidence. Ely's inability to provide for his basic human needs was allegedly due to his having no place to stay and no source of income. Dr. Rajendran offered his opinion that Ely could not hold a job due to his illness. Dr. Anthony testified that Ely had related to him that he had employment at a grocery store and could return there after his discharge. The employer was not called as a witness, nor was anyone who had seen Ely in a job situation.

Dr. Rajendran testified that "I don't think he has any place to live." White testified that Ely had told him that Ely's mother would not allow Ely to return home. Ely's mother was not called to testify. Hospital notes indicated that Ely wished to get his own apartment after he returned to work.

The evidence that Ely had no place to stay and no source of income was based on speculation and hearsay. Such evidence was admitted over objection and would be considered "inadmissible in criminal proceedings," and therefore inadmissible in these proceedings as provided in § 83-1059. As this case is decided on sufficiency of the evidence, we need not reach the question of whether not having a job or home can be used as a basis for finding one a danger to himself.

The order of the district court is reversed, and the cause is remanded to the district court to remand the case to the mental health board with directions to dismiss the petition of July 6, 1984.

REVERSED AND REMANDED WITH DIRECTIONS.