IN RE INTEREST OF LARRY DICKSON, ALLEGED TO BE A MENTALLY
ILL DANGEROUS PERSON.
STATE OF NEBRASKA, APPELLEE, V. LARRY DICKSON, APPELLANT.
469 N.W.2d 357

Filed May 17, 1991.   No. 90-1103.

Martin G. Cahill, Chief Deputy Hall County Public Defender, for appellant.

Susan M. Koenig, Chief Deputy Hall County Attorney, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

WHITE, J.

Larry Dickson is currently incarcerated at the Lincoln Regional Center under the provisions of the Nebraska Mental Health Commitment Act, Neb. Rev. Stat. §§ 83-1001 et seq. (Reissue 1987). On December 19, 1986, the Hall County Mental Health Board (board) found Dickson to be a mentally ill dangerous person under the definition of § 83-1009(1) and

ordered him committed for treatment. It is alleged that Dickson caused the death of his mother, Delilah Dickson, by strangulation on January 7, 1984, while under a hypnosis-induced delusion that he had been authorized to kill her pursuant to a death warrant. Dickson was not tried for the homicide.

On July 12, 1990, the board held a hearing pursuant to Dickson's motion under § 83-1046 for review of his commitment. After hearing testimony from Dickson himself and from Dr. Charles Richardson, a psychiatrist who has cared for Dickson in the regional center since June 28, 1988, the board found that pursuant to § 83-1046 no cause had been shown that there no longer existed need for continued care or treatment of Dickson or that less restrictive treatment alternatives existed for him, and denied the motion for rehearing. Dickson timely appealed to the district court, which affirmed the findings of the board, stating that "[t]he Court finds that the subject failed to show cause no longer exists for commitment or that a less restrictive environment exists for a person committed as a mentally ill dangerous person . . . ."

Dickson assigns as error the district court's determination that the subject of the proceeding bears the burden of showing that he is no longer a mentally ill dangerous person and therefore eligible for release or a less restrictive form of treatment.

Section 83-1009(1) defines a mentally ill dangerous person as a person who presents "[a] substantial risk of serious harm to another person or persons within the near future as manifested by evidence of recent violent acts or threats of violence or by placing others in reasonable fear of such harm."

Upon the filing of a petition by the county attorney declaring his or her belief that the subject of the petition is a mentally ill dangerous person, the mental health board must hold a hearing and determine by clear and convincing evidence that the subject of the petition is mentally ill and dangerous. See §§ 83-1024, 83-1025, and 83-1035. The board may order involuntary hospitalization or other treatment if it finds such clear and convincing evidence exists. § 83-1037. Section 83-1046 provides that the care or treatment of the subject may be modified or

stopped if any person shows that cause exists to stop or change the subject's treatment.

These statutes do not expressly state which party bears the burden of initially proving that the subject of the petition is a mentally ill dangerous person, nor do they specify which party must show that cause no longer exists for the hospitalization or treatment of the subject. Dickson argues that the burden should be on the State to prove that he remains mentally ill and dangerous and thus subject to involuntary hospitalization. We agree.

In *Tulloch v. State*, 237 Neb. 138, 465 N.W.2d 448 (1991), this court analyzed the statutes governing the commitment of persons acquitted of crimes because of insanity. Under Neb. Rev. Stat. § 29-3702 (Reissue 1989), at the expiration of the evaluation period, the court must find by clear and convincing evidence that the individual remains dangerous in order to continue holding him. We interpreted this statute to mean that the burden is on the State to prove by clear and convincing evidence that the individual remains dangerous.

We adopt a similar interpretation of the burden of proof requirements of the Nebraska Mental Health Commitment Act. When the State petitions to have an individual declared mentally ill and dangerous under § 83-1009, it must prove by clear and convincing evidence that the individual poses a substantial risk of harm to others or to himself. It follows that upon review of the commitment under § 83-1046, the State must also prove by clear and convincing evidence that the individual remains mentally ill and dangerous. We interpret the "any person" language of § 83-1046 to require the State to show cause why the subject of the petition should remain incarcerated under the act.

In this case, the district court was incorrect in its determination that Dickson had failed to show sufficient cause why he should be released from the regional center. The State was charged with that burden. However, the district court's error proved harmless.

We have reviewed the record of Dickson's review hearing and find that despite the district court's determination that Dickson did not show cause why he should be released, the State proved

by clear and convincing evidence that Dickson remains mentally ill and dangerous. Dickson testified on his own behalf and stated that he wanted to be released because he thought it was a good idea. He also stated that his delusional state was a result of being hypnotized by use of a strobe light; that the hypnosis had "expired" after 3 years, and he was fine now; and that the death of his mother was due to his hypnotized state and was not his fault. The State offered the testimony of Dr. Richardson, who stated numerous times that although Dickson's condition had improved over the years, he still remained delusional concerning the cause and circumstances of his mother's death. Richardson felt that Dickson had not yet accepted the fact that he was mentally ill, and in particular had not admitted that he was ill at the time he attacked his mother. Richardson also stated that he would not recommend releasing Dickson or placing him in a less restrictive setting, such as a "halfway" or transitional living situation, at this time.

We find clear and convincing evidence in the record to support the State's contention that Dickson remains mentally ill and dangerous. The district court's error, placing the burden of proof on Dickson, in affirming the decision of the board was harmless.

AFFIRMED.