IN RE INTEREST OF WESLEY DEAN VANCE, ALLEGED TO BE A MENTALLY ILL DANGEROUS PERSON.
STATE OF NEBRASKA, APPELLEE, V. WESLEY DEAN VANCE, APPELLANT.
493 N.W.2d 620

Filed December 24, 1992.   No. S-91-769.

Leo J. Eskey for appellant.

Dean Skokan, Dodge County Attorney, and Eric Miller for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

GRANT, J.

On February 29, 1988, in the district court for Dodge County, Nebraska, appellant, Wesley Dean Vance, pled guilty

to sexual assault of a child. He was sentenced to 20 months' to 5 years' imprisonment. He was scheduled to be released on January 14, 1991.

Pursuant to Neb. Rev. Stat. § 29-2920 (Reissue 1989), a statute repealed on July 15, 1992, the county attorney of Dodge County was notified of Vance's pending release. Although § 29-2920 is now repealed, we will review the case before us in accordance with the procedural steps for appeals provided in the statutes in effect at the time of Vance's appeal. See *Gas 'N Shop v. Nebraska Liquor Control Comm.*, 241 Neb. 898, 901, 492 N.W.2d 7, 10 (1992), where we stated: "While as a general matter changes in procedural statutes apply to pending litigation, they have no retroactive effect upon steps taken in an action before such changes became effective. See *State v. Russell*, 194 Neb. 64, 230 N.W.2d 196 (1975)."

After being so notified, the Dodge County Attorney then filed a petition before the Dodge County Mental Health Board and alleged that Vance was a mentally ill dangerous person within the meaning of Neb. Rev. Stat. § 83-1009 (Reissue 1987). The board found that Vance was such a mentally ill dangerous person and committed him to the Lincoln Regional Center for inpatient treatment. Vance appealed to the Dodge County District Court, which affirmed the board's actions. Vance timely appealed to this court.

In his appeal to this court, Vance contends that the board erred (1) in finding that he was mentally ill; (2) in finding that he was "a dangerous person, as defined by Section 83-1009"; and (3) in committing him "to full time inpatient hospitalization as opposed to outpatient or another less restrictive program." We affirm.

Before a person may be committed for treatment by a mental health board, it is necessary that the person be found to be mentally ill and that the person presents a substantial risk of serious harm to others or to himself or herself. § 83-1009; *In re Interest of Kinnebrew*, 224 Neb. 885, 402 N.W.2d 264 (1987).

A district court's review of an appeal from a mental health board is de novo on the record, and on further appeal, an appellate court will not interfere with a final order made by the district court unless the appellate court finds, as a matter of

law, that the order is not supported by clear and convincing evidence. *In re Interest of Rasmussen*, 236 Neb. 572, 462 N.W.2d 621 (1990).

The record before us shows that at the hearing before the board on February 28, 1991, the only evidence adduced was that of two clinical psychologists: Dr. James Cole, who examined Vance at Vance's request; and Dr. Suzanne Bohn, who is employed by the Nebraska Department of Correctional Services. After hearing testimony from the two psychologists, the board found there was clear and convincing evidence that appellant was a mentally ill dangerous person and ordered full-time inpatient hospitalization for a period of observation not to exceed 60 days, with provisions for future reports and continued inpatient treatment.

With regard to Vance's first assignment of error, Neb. Rev. Stat. § 83-1037 (Reissue 1987) requires that a mental health board's conclusion that a person before it is a mentally ill dangerous person and that a less restrictive alternative is not available or would not suffice to prevent the harm described in § 83-1009 must be supported by clear and convincing evidence. See *In re Interest of Dickson*, 238 Neb. 148, 469 N.W.2d 357 (1991). Section 83-1009 provides, in part, that a mentally ill dangerous person is a person who is mentally ill and who presents "[a] substantial risk of serious harm to another person or persons within the near future as manifested by evidence of recent violent acts."

Vance contends there was not clear and convincing evidence that he was a mentally ill dangerous person. The record shows to the contrary. The psychologists testifying at the hearing provided a similar account of Vance's background. Vance was born on December 5, 1956. After his mother's death when he was 13 years old, his older brothers began to sexually abuse him. At some point, appellant began to enjoy the sexual activity, and the brothers began bringing young "customers," both adolescents and age-related peers, from the neighborhood to engage in sexual activity with appellant in exchange for money. This activity continued until 1980, when Vance was 23 years old. At that time, Vance was convicted of sexual assault on a 14-year-old boy and a 14-year-old girl. The 14-year-old boy

had engaged in a 6-month-long sexual relationship with the appellant. Vance was imprisoned from 1980 to 1985, and after his release, he left Nebraska from 1986 to 1987.

Then, as set out above, in 1988 Vance pled guilty to the crime of sexual assault on a 9-year-old child and was sentenced to 20 months' to 5 years' imprisonment.

Dr. Bohn based her diagnosis of Vance on a review of his history and on two interviews with him, one in 1988, when he entered the correctional facility, and again in 1991, in preparation for the hearing before the board in this case. Dr. Bohn diagnosed Vance as having a mental illness known as pedophilia and an unspecified personality disorder. She testified that Vance met the three criteria for determining whether or not a person is a pedophile: (1) Vance had recurrent urges to engage in sexual behavior with prepubescent or postpubescent children over a period of time exceeding 6 months; (2) he "acted out on those urges, which obviously he has some since he's been convicted and he also admits to engaging in this behavior," and (3) he was over 16 years of age and was at least 5 years older than his victims. Bohn further testified that in her opinion, there was a substantial probability that Vance would reoffend.

Dr. Cole reached a different conclusion. He based his diagnosis on a review of prior assessments that had been done in 1980 and 1988 and on one interview with Vance prior to the hearing. In Cole's opinion, Vance was not a "true" pedophile because his sexual orientation was not limited to prepubescent children. Cole defined a pedophile as an individual with a specific erotic sexual attraction to prepubescent children and as one "whose arrested psycho-sexual development means that [the individual is] unresponsive sexually to peers or to people older than prepubescent children." Dr. Cole had been informed that Vance had been divorced twice, and he focused on Vance's past sexual relationships with adults to determine that Vance was not a "true" pedophile. Cole found that Vance's early sexual experiences had prevented him from developing the moral and social restraint that most people develop to restrict their behavior. He diagnosed Vance as having an antisocial personality disorder, not within the definition of mental illness

as he understood it, and recommended that Vance should not be classified as a dangerous person under the definition set forth in the civil commitment statutes. Dr. Cole testified that he did not recommend any course of treatment for Vance at this time. While he testified that he did not consider Vance to be a "true" pedophile, he did agree that Vance posed a higher risk of assaulting children than others in the general population.

Cole's description of a pedophile as one whose sexual arousal could only be accomplished with prepubescent children was contradicted by the "Diagnostic and Statistical Manual." On cross-examination, Dr. Cole agreed that the manual was an accepted authority on diagnostic mental disorders. The manual states that the essential feature of pedophilia is the act or fantasy of engaging in sexual activity with prepubescent children as a repeated, *preferred*, or exclusive method of achieving sexual excitement. In Vance's case, he had sexual relationships with adults, but he indicated to Bohn that he had a preference for young boys, and he indicated that given the opportunity, he would again engage in sexual activity with young children.

In addition to Dr. Bohn's and Dr. Cole's testimony, evidence before the board showed that Dr. Cole considered a report of Dr. Robert E. Mitchell, a psychologist, who evaluated Vance in March 1988 and determined that Vance was a mentally disordered sex offender and that he was a pedophile with an antisocial personality.

The trier of fact in this case, the board, had sufficient evidence before it to support the order the board entered. That evidence included the testimony of Dr. Bohn, the prior evaluation of Vance by Dr. Mitchell, and the description of pedophilia set forth in the diagnostic manual. The board's decision that appellant was mentally ill was supported by clear and convincing evidence.

In his second assignment of error, Vance contends that the board erred in finding that he was a dangerous person, as defined in § 83-1009, at the time of the hearing. We have stated, "[A]ny act that is used as evidence of dangerousness must be sufficiently probative to predict future behavior and the subject's present state of dangerousness." *In re Interest of*

*Blythman*, 208 Neb. 51, 59, 302 N.W.2d 666, 672 (1981). The question in this case is whether, considering that there is no evidence of any inappropriate conduct by Vance with a child from 1985 up to the time of Vance's involvement with a 9-year-old child in 1988, Vance's acts in 1980 and 1988 are probative evidence of appellant's present state of dangerousness. This court has stated that in determining whether an act is sufficiently recent to be probative on the issue of dangerousness, " '[e]ach case must be decided on the basis of the surrounding facts and circumstances.' " *State v. Hayden*, 233 Neb. 211, 221, 444 N.W.2d 317, 324 (1989). Accord *Hill v. County Board of Mental Health*, 203 Neb. 610, 279 N.W.2d 838 (1979).

Vance told mental health professionals that he did not engage in any sexual activity with children from 1980 until 1988. In the years between 1980 and 1985, he was imprisoned and, therefore, unable to engage in such activity. Vance testified he was not in Nebraska from 1986 to 1987, but he told Dr. Cole that he was involved in a homosexual relationship during that time and had not been involved with children. The record shows that Vance returned to Nebraska in 1987, and in 1988, he pled guilty to the sexual assault of the 9-year-old boy. In *Blythman, supra*, we held that an act which occurred 5 years prior to commitment was not too remote to be probative of Blythman's state of dangerousness in light of his incarceration, which had prevented him from committing a more recent act in the intervening years. In this case, Vance did not have the opportunity to reoffend while incarcerated, and any inappropriate conduct committed in another state would be difficult to discover. There was sufficient evidence for the board to find that Vance's past acts were probative of his present state of dangerousness.

Vance has demonstrated his potential to harm others through his past assaults on children. His decision not to participate in treatment programs available in prison and his lack of intent to seek treatment once released demonstrate his lack of understanding of his problem. Both incidents of sexual assaults on minors resulting in Vance's imprisonment occurred when Vance was involved in relationships with adult women. In one

instance, he was living with his girl friend while engaged in a 6-month affair with a 14-year-old boy. Vance's lack of control was displayed during his most recent assault, for which he was convicted in 1988. On that occasion, Vance was playing with the victim, who was his then girl friend's nephew, when the 9-year-old accidentally kicked Vance in the groin. Vance stated he was unable to control himself at that time and began to kiss the child.

In light of Vance's history of sexual assault on children, his propensity to engage in sexual activity with children as a preferred method of sexual gratification, and his lack of awareness of this preference as a problem, it cannot be said, as a matter of law, that the order of the board was unsupported by clear and convincing evidence.

Vance also assigns as error the board's action in committing him to inpatient hospitalization. Before a board can commit a person for inpatient treatment, the board must conclude that no less restrictive alternative than a board-ordered commitment for treatment is available or would suffice to prevent the harm described in § 83-1009.

" 'The key to confinement of one who is mentally ill lies in the finding that he is dangerous, i.e., that absent confinement, he is likely to engage in particular acts which will result in substantial harm to himself or others.' " *In re Interest of McDonell*, 229 Neb. 496, 498, 427 N.W.2d 779, 781 (1988). As set forth in Neb. Rev. Stat. § 83-1038 (Reissue 1987): "The board shall consider all treatment alternatives, including any treatment program or conditions suggested by the subject . . . . Full-time inpatient hospitalization or custody shall be considered a treatment alternative of last resort." Dr. Bohn testified that Vance would engage in sexual activity with minors, given the opportunity. She testified that absent the involuntary commitment, Vance would not seek treatment because he did not believe he had a problem. She recommended the inpatient treatment for Vance because she felt that only through direct confrontation of the problem would Vance realize he had a problem.

There was sufficient evidence to find that Vance would not benefit from an outpatient treatment program and that if

116

released, he would present the type of harm § 83-1009 was designed to prevent. The board did not err in ordering inpatient hospitalization for Vance. The district court did not err in affirming the order of the board.

AFFIRMED.