IN RE INTEREST OF RICHARD KOCHNER, ALLEGED TO BE
A MENTALLY ILL DANGEROUS PERSON.
RICHARD KOCHNER, APPELLANT, V. MENTAL HEALTH
BOARD, LANCASTER COUNTY, APPELLEE.

662 N.W.2d 195

Filed June 6, 2003.    No. S-02-998.

Dennis R. Keefe, Lancaster County Public Defender, Dorothy A. Walker, and Matthew G. Graff, Senior Certified Law Student, for appellant.

Gary E. Lacey, Lancaster County Attorney, and Barbara J. Armstead for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, MCCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

The Lancaster County Mental Health Board (Board) determined that the appellant, Richard Kochner, is a mentally ill dangerous person under Neb. Rev. Stat. § 83-1001 et seq. (Reissue 1999 & Cum. Supp. 2000), of the Nebraska Mental Health Commitment Act (Commitment Act). The Board ordered him committed for inpatient treatment. The district court, sitting as an appellate court under § 83-1043, affirmed the Board's decision, and Kochner appealed. We affirm.

## ASSIGNMENTS OF ERROR

Kochner assigns, restated, that the district court erred in concluding that (1) his statutory right to have a hearing within 7 days of being taken into protective custody was not denied; (2) there was sufficient evidence to support the Board's order of commitment; (3) inpatient treatment was the least restrictive treatment alternative available; and (4) the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. (2000) did not require the State to provide the type of community-based program recommended by his expert as an alternative to inpatient treatment.

## STANDARD OF REVIEW

The district court reviews the determination of the mental health board de novo on the record. See, § 83-1043; *In re Interest of Ely*, 220 Neb. 731, 371 N.W.2d 724 (1985). In reviewing a district court's judgment under the Commitment Act, appellate courts will affirm the district court's judgment unless, as a matter of law, the judgment is unsupported by evidence which is clear and convincing. *In re Interest of S.B.*, 263 Neb. 175, 639 N.W.2d 78 (2002).

## BACKGROUND

In 1991, Kochner sexually assaulted his 14-year-old daughter. He was convicted of sexual assault on a child as a result of the incident and was sentenced to probation for a period of 2 years.

In May 1999, the State charged Kochner with sexual assault of a child. The State alleged that he had sexually assaulted a girl for whom his wife was babysitting. He pled no contest to the charges, and the court sentenced him to 2 to 5 years' imprisonment.

Kochner, who was serving his sentence at the Omaha Correctional Center, was scheduled to be released on October 4, 2001. On August 14, Mark E. Weilage, Ph.D., a clinical psychologist at the Omaha Correctional Center, sent a letter to the Douglas County Attorney's office recommending that Kochner be referred to the Board for possible postincarceration commitment.

On September 13, 2001, the Douglas County Attorney filed a petition claiming that Kochner was a mentally ill dangerous person and that "mental-health-board-ordered treatment" was the least restrictive means for addressing the issue. The petition also claimed that "the immediate custody of [Kochner] is required to prevent the occurrence of the harm described by section [sic] § 83-1009." The parties agree that the Douglas County Mental Health Board ordered Weilage to take Kochner into protective custody on September 13. But, it is unclear how long Weilage held Kochner in protective custody.

Sometime on or after September 13, 2001, the case was transferred to Lancaster County. On October 1, the Lancaster County Attorney filed an amended petition. The county attorney alleged that "the immediate custody of [Kochner] is required to prevent the occurrence of the harm described by § 83-1009." Apparently on the same day, the Lancaster County Mental Health Board issued a summons on the amended petition and a warrant for Kochner's arrest. The summons set October 11 as the date for the hearing on whether to commit Kochner.

The record does not show the exact date that officials from Lancaster County took Kochner into protective custody. In its brief, the State claims that Kochner "was served with a warrant to appear before the Lancaster County Mental Health Board" on October 3, 2001, but that he was not taken into protective custody until October 4. Brief for appellee at 5. Kochner, however, claims he was taken into protective custody by officials from Lancaster County on October 3.

The Board held a hearing on October 11, 2001. At the hearing, Kochner moved to dismiss the amended petition because

the summons failed to set a hearing within 7 days of the time he was taken into protective custody. See § 83-1027. The Board denied the motion to dismiss.

The Board held a hearing on the substantive issues on January 29, 2002. The State presented evidence from Weilage; John Nason; and Mary Paine, Ph.D. Weilage testified that Kochner failed to complete a treatment program for sexual offenders. Nason, a mental health technician with the Lancaster County correctional facility, testified about an incident that occurred in mid-October 2001 in which he had observed Kochner masturbating in the correctional facility's library.

Paine, a clinical psychologist, was the State's expert witness. She diagnosed Kochner as having "[p]edophilia . . . nonexclusive, cognitive disorder NOS, . . . personality disorder NOS, with prominent anti-social and prominent schizotypal features." When asked if she believed Kochner poses a risk to himself or others, Paine testified to a reasonable degree of psychological certainty that he is "at moderate to high risk with the emphasis being on the high risk of re-offending sexually against minor females."

Paine rejected the contention that because 4 years had passed since the last sexual assault, there was no evidence that Kochner posed an immediate threat. Paine pointed out that Kochner had been imprisoned for much of that period and that he had failed to complete treatment while incarcerated. Paine also stated that Kochner's inappropriate sexual behavior at the Lancaster County correctional facility indicated that he still had poor judgment and a lack of impulse control.

Paine also testified that the least restrictive treatment alternative which would successfully treat Kochner's mental illness was inpatient sex offender treatment at the Lincoln Regional Center.

A. Jocelyn Ritchie, Ph.D., a psychologist specializing in neuropsychology, testified for Kochner. She diagnosed him as having pedophilia and cognitive disorder, as well as personality disorder with antisocial and schizotypal features. She placed Kochner at moderate risk for recidivism. Ritchie also opined as to what was the least restrictive treatment option. She believed that a regimented outpatient treatment program would be successful if Kochner was kept away from children and he lived in a supervised community residence.

The Board determined that Kochner "suffers from pedophilia, opposite sex, non-exclusive; cognitive disorder, NOS; and personality disorder, NOS, with anti-social and schizotypal features." It also concluded that Kochner "presents a substantial risk to other persons within the near future as manifested by recent acts of violence toward other persons." The Board determined that "neither voluntary hospitalization nor other treatment alternatives less restrictive of [Kochner's] liberty are available to prevent the harm described in the petition by reason that [Kochner], in his present mental condition, requires inpatient treatment." Accordingly, the Board ordered Kochner committed for inpatient treatment.

Kochner appealed the Board's decision to the district court. The court affirmed the Board's decision.

## ANALYSIS

### TIMELINESS OF HEARING

Section 83-1027 provides:

> Upon the filing of the petition provided by sections 83-1025 and 83-1026 stating the county attorney's belief that the immediate custody of the subject is not required for the reasons provided by sections 83-1025 and 83-1026, the clerk of the district court shall cause a summons fixing the time and place for a hearing to be prepared and issued to the sheriff for service. . . . The summons shall fix a time for the hearing within seven days after the subject has been taken into protective custody.

In his first assignment of error, Kochner argues that § 83-1027 requires that a hearing be held within 7 days of the time that the person is taken into protective custody. He claims that his hearing was held more than 7 days after he was taken into protective custody and that thus, the Board should have dismissed the petition. We, however, decline to address the merits of this assignment of error, because the record presented is inadequate to show that Kochner was ever held under the authority of a mental health board for more than 7 consecutive days without a hearing.

The parties' briefs reveal a disagreement over which day Kochner was taken into protective custody. Kochner claims that he was taken into protective custody by Lancaster County on

October 3, 2001, 8 days before the initial hearing. In its brief, however, the State claims that the Lancaster County sheriff served Kochner with "a warrant to appear before the Lancaster County Mental Health Board" on October 3, but that Lancaster County did not take Kochner into protective custody until October 4, 7 days before the initial hearing. Brief for appellee at 5. If the State's date is correct, then even if we adopted Kochner's interpretation of § 83-1027, the statute would not have been violated because the hearing would have been held within 7 days of the time that Lancaster County took Kochner into protective custody.

The record does not provide a basis by which we can resolve the dispute over which day Lancaster County took Kochner into protective custody. A summons and an arrest warrant, both issued by the Lancaster County Mental Health Board, appear in the record, but the return is not filled out on either one. The record also contains a form that the Lancaster County Attorney apparently provides to subjects of a pending mental health hearing. The form is dated October 3, 2001, but it is unclear if this date refers to the date that the form was printed, the date Kochner was served with the summons, or the date that Kochner was taken into protective custody by Lancaster County.

We note that to support his contention that he was taken into protective custody on October 3, 2001, Kochner's brief cites only to portions of the oral argument made by his counsel before the Board. Oral argument made by counsel during a hearing before a mental health board is not evidence. See *State v. Bassette*, 6 Neb. App. 192, 571 N.W.2d 133 (1997). See, also, *State v. Trotter*, 262 Neb. 443, 632 N.W.2d 325 (2001). Moreover, in a refreshing display of candor, Kochner's counsel conceded at oral argument, before this court, that the record was insufficient to show which day Lancaster County took Kochner into protective custody.

Alternatively, Kochner argues that we should use the date that Kochner was taken into custody under the authority of an order from the Douglas County Mental Health Board. The petition was originally filed in Douglas County, and on September 13, 2001, the Douglas County Mental Health Board issued an order directing Weilage to take Kochner into protective custody. Subsequently (the exact date is unclear), a district court judge from Douglas County issued an order authorizing the case to be

transferred to the Lancaster County Mental Health Board. The Lancaster County Attorney then filed an amended petition, and the Lancaster County Mental Health Board issued a summons and an arrest warrant. Kochner, as we understand it, suggests that he remained in protective custody under the authority of the September 13 order at the time that the Lancaster County sheriff picked him up and that therefore, we should use September 13 as the trigger date for when a hearing must be held under § 83-1027.

The record, however, is insufficient to show that Kochner was held under the authority of the September 13, 2001, order for more than 7 days without a hearing. The September 13 order states protective custody was to last for a period of up to 7 days "unless you receive further instruction from this Board." Nothing in the record shows that the order was extended beyond 7 days. It is equally plausible that the September 13 custody order simply expired and that Kochner was "released" back to the exclusive custody of the Department of Correctional Services, where he remained until the Lancaster County sheriff took him into protective custody on either October 3 or 4. Thus, on the record before us, we cannot say that Kochner was held in protective custody under the authority of a mental health board for more than 7 consecutive days without receiving a hearing.

■ It is incumbent upon the appellant to present a record which supports the errors assigned; absent such a record, as a general rule, the decision of the lower courts as to those errors is to be affirmed. *State v. Abbink*, 260 Neb. 211, 616 N.W.2d 8 (2000). Because we cannot tell from the record whether Kochner was held in protective custody for more than 7 consecutive days without a hearing, we decline to address the merits of his first assignment of error.

SUBSTANTIAL RISK OF HARM

■ Before a person may be committed for treatment by a mental health board, the board must determine that the person meets the definition of a mentally ill dangerous person as set out in § 83-1009. See *In re Interest of Vance*, 242 Neb. 109, 493 N.W.2d 620 (1992). To meet the definition of a mentally ill dangerous person, the State must show that the person suffers from a mental illness and that the person presents a substantial risk of

harm to others or to himself or herself. See, § 83-1009; *In re Interest of Vance, supra.* Kochner does not dispute, and the record supports, the Board's conclusion that he suffers from pedophilia and was therefore mentally ill. He does, however, challenge the Board's determination that he presents a substantial risk of harm to others.

The State relied on § 83-1009(1) in attempting to prove that Kochner presented a substantial risk of harm to others. In its pertinent part, § 83-1009(1) provides that a mentally ill dangerous person is any mentally ill person who presents a "substantial risk of serious harm to another person or persons within the near future *as manifested by evidence of recent violent acts.*" (Emphasis supplied.) To meet the recent violent act requirement of § 83-1009, the State relied on the sexual assault that Kochner committed in 1998. Kochner argues that this sexual assault was not recent enough to meet the requirements of § 83-1009. We disagree.

The recent violent act requirement is meant as a safeguard to ensure that the liberty of the subject is not unjustly restrained. See, generally, John Q. La Fond, *An Examination of the Purposes of Involuntary Civil Commitment,* 30 Buffalo L. Rev. 499 (1981). See, also, *Doremus v. Farrell,* 407 F. Supp. 509 (D. Neb. 1975) (declaring predecessor to current Commitment Act violated due process rights, in part because it did not have recent overt act requirement). We have said:

> "To confine a citizen against his will because he is likely to be dangerous in the future, it must be shown that he has actually been dangerous in the recent past and that such danger was manifested by an overt act, attempt or threat to do substantial harm to himself or to another."

*In re Interest of Blythman,* 208 Neb. 51, 57, 302 N.W.2d 666, 671 (1981), quoting *Lynch v. Baxley,* 386 F. Supp. 378 (M.D. Ala. 1974). Thus, "any act that is used as evidence of dangerousness must be sufficiently probative to predict future behavior and the subject's present state of dangerousness." *In re Interest of Blythman,* 208 Neb. at 59, 302 N.W.2d at 672. "[I]n determining whether an act is sufficiently recent to be probative on the issue of dangerousness, ' "[e]ach case must be decided on the basis of the surrounding facts and circumstances." ' " *In re Interest of*

*Vance*, 242 Neb. at 114, 493 N.W.2d at 624, quoting *State v. Hayden*, 233 Neb. 211, 444 N.W.2d 317 (1989). Accord *In re Interest of Tweedy*, 241 Neb. 348, 488 N.W.2d 528 (1992).

In *In re Interest of Blythman, supra*, the State relied on a sexual assault that the subject had committed 5 years before the hearing before the Lincoln County Mental Health Board. The subject had been incarcerated since the time of the assault. He argued that to allow the assault to meet the recent act requirement would have permitted involuntary civil commitment regardless of how remote in time the acts or threats of violence were. In response, we stated:

> The argument is well taken. However, such a result does not necessarily follow if it is kept in mind that any act that is used as evidence of dangerousness must be sufficiently probative to predict future behavior and the subject's present state of dangerousness. It is conceivable that an act more recent than another would be less probative of the subject's future conduct than the earlier act. Considering all of the factors, we cannot say that as a matter of law an act which occurred 5 years ago is too remote to be probative of the subject's present state of dangerousness. This is particularly true since the subject did not have an opportunity to commit a more recent act in the intervening years.
>
> The fact situation in this case is somewhat unique in that the subject's mental illness manifests itself in sexual acts toward young girls. He has not had the opportunity to commit such an act in the past 5 years because he has been incarcerated in the Penal Complex, where he has had no access to prospective victims. We cannot believe that the Legislature intended that by requiring a recent act or threat, a mentally ill person should be given the opportunity to commit a more recent act once a sufficient amount of time has passed since the last act. Judicial action need not be forestalled until another young girl is sexually assaulted, or some other harm takes place.

208 Neb. at 59, 302 N.W.2d at 672. See, also, *In re Interest of Vance*, 242 Neb. 109, 493 N.W.2d 620 (1992); *In re Interest of McDonell*, 229 Neb. 496, 427 N.W.2d 779 (1988).

The facts of this case are similar to those in *In re Interest of Blythman, supra.* Kochner's pedophilia manifests itself in an attraction to young girls. Because he has been incarcerated for 3 years, he has lacked access to prospective victims. Equally important, significant evidence was presented at the hearing showing that Kochner remains a danger because of his illness. He refuses to acknowledge that he suffers from pedophilia, and he continues to claim that he does not remember what happened during the two previous assaults. Because of his unwillingness to acknowledge his illness, he was unable to complete a sex offender specific treatment program while he was incarcerated. He also continues to demonstrate poor impulse control, as evidenced by the October 2001 incident at the Lancaster County correctional facility where he was observed masturbating in the library. The State's expert, Paine, testified that until Kochner acknowledges his illness and receives treatment, he will continue to pose a moderate-to-high risk of committing further sexual assaults on children.

Kochner argues that this case is distinguishable from *In re Interest of Blythman,* 208 Neb. 51, 302 N.W.2d 666 (1981), because of the time that lapsed between when he committed the 1998 sexual assault and when he was arrested for the assault. The record shows that the sexual assault occurred in either early October or late November 1998. Kochner was apparently first contacted about the assault in December 1998. The record shows that he was arrested for the assault in either March or April 1999 and that the State filed an information in May. He argues that the lapse of 5 to 6 months between the time of the assault and the time he was arrested indicates that the county did not consider him to be an immediate danger. Cf. *Hill v. County Board of Mental Health,* 203 Neb. 610, 617, 279 N.W.2d 838, 841 (1979) ("act or threat is 'recent' within the meaning of section 83-1009 . . . if the time interval between it and the hearing of the mental health board is not greater than that which would indicate processing of the complaint was carried on with reasonable diligence under the circumstances existing, having due regard for the rights and welfare of the alleged mentally ill dangerous person").

■ There is, however, no "definite time-oriented period to determine whether an act is recent. Each case must be decided on the basis of the surrounding facts and circumstances." See *In re Interest of Blythman*, 208 Neb. at 58, 302 N.W.2d at 671. Here, several relevant factors affect whether the 1998 assault is sufficiently recent to be probative on the issue of dangerousness: (1) Kochner's history of sexual assault, (2) his inability to reoffend while he was incarcerated, (3) his continuing inability to confront his illness, and (4) his lack of impulse control. Given these factors, we cannot say that the district court erred as a matter of law in concluding that the 1998 sexual assault was sufficiently recent to meet the requirements of § 83-1009. Cf. *In re Interest of Vance*, 242 Neb. 109, 493 N.W.2d 620 (1992).

### LESS RESTRICTIVE TREATMENT ALTERNATIVES

Kochner next argues that the Board's order violates the Commitment Act because the State failed to show by clear and convincing evidence that treatment alternatives less restrictive than commitment for inpatient treatment were available. Section 83-1038 provides in part:

> The disposition ordered by the mental health board shall represent the alternative which imposes the least restraint upon the liberty of the subject required to successfully treat the particular mental illness and prevent the particular harm which was the basis for the board's finding the person to be a mentally ill dangerous person. The board shall consider all treatment alternatives, including any treatment program or conditions suggested by the subject, the subject's counsel, or any interested person, including outpatient treatment, consultation, chemotherapy or any other program or set of conditions. Full-time inpatient hospitalization or custody shall be considered a treatment alternative of last resort.

To support his claim, Kochner relies upon Ritchie's testimony. She recommended that Kochner be placed in an outpatient program in which he would be "closely supervised and receive services and case management equivalent to intensive supervised parole." The program envisioned by Ritchie would have placed numerous restrictions on Kochner, including:

a. living in a supervised community residence and 100% compliance with all [its] rules and regulations,

b. 100% attendance and active participation in intensive outpatient individual sex offender treatment . . . .

. . . .

e. random urinalysis for substance abuse and random liver enzyme assays for alcohol use.

f. the appointment of a guardian to manage his affairs including personal and financial decision-making . . . .

. . . .

h. an agreement by [Kochner] and all immediate significant others that he will be required to take steps to actively avoid any and all contact with children . . . .

i. an agreement by [Kochner] that he is never to be alone with children under any circumstances, and that in those circumstances where he cannot avoid being in the presence of particular children . . . he is supervised by an awake, informed service provider or other awake, informed person [sic] approved by his clinical team[.]

Ritchie conceded that no program like the one she envisioned existed in Lancaster County, but testified that the county could develop such a program with "a variety of mechanisms and resources available to it."

The Board rejected Ritchie's hypothetical outpatient treatment program and determined that inpatient treatment was the least restrictive treatment alternative available. It noted that it knew of no outpatient treatment program that would have included the physical constraints envisioned by Ritche—particularly those that required Kochner to stay away from children. It also reasoned that the "close supervision and specially designed sex offender program envisioned by both Dr. Paine and Dr. Ritchie is [sic] virtually impossible in any environment except the Lincoln Regional Center program."

In reaching its decision, the Board relied primarily on Paine's testimony that inpatient treatment was the least restrictive treatment option. Kochner argues that Paine's testimony is insufficient to support the Board's conclusion because the only basis for her opinion was that no current outpatient program in Lancaster County would accept Kochner. This argument,

however, mischaracterizes Paine's testimony. She did testify that because Kochner had consistently denied or minimized his previous offenses, she was not aware of any outpatient sex offender program in Omaha or Lincoln which would accept him. But that was not the sole basis for her opinion. Paine also testified that the level of risk presented by Kochner was too high to place him in an outpatient program, even one with the restrictions suggested by Ritchie. Moreover, she pointed out that Kochner lacked "any insight whatsoever in[to] his sexual deviancy" and was "non-disclosing regarding the majority of his sexual thoughts and urges." In Paine's opinion, these two factors meant that Kochner would be unable to identify and report the symptoms of his mental illness in an outpatient regimen and that therefore the greater degree of supervision associated with an inpatient program was warranted. Finally, Paine noted that Kochner also suffers from cognitive disabilities as a result of a head injury he suffered as a teenager and that the inpatient sex offender program at the Lincoln Regional Center was specifically modified to treat such individuals.

Upon its de novo review of the record, the district court agreed with the Board's conclusion that commitment was the least restrictive treatment recommendation. Given Paine's testimony, the district court did not err in reaching this determination.

## CONCLUSION

We cannot say, as a matter of law, that the district court's judgment upholding the Board's commitment order was unsupported by clear and convincing evidence. We have reviewed Kochner's remaining assignment of error and find it to be without merit. Accordingly, the determination of the district court is affirmed.

AFFIRMED.

STEPHAN, J., participating on briefs.